UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



DEEP FOODS INC., *a New Jersey Corporation*,

Plaintiff,

v.

DEEP FOODS INC., *a New York Corporation*,
and VIKRAMDEEP CHEEMA,

Defendants.

**DECISION AND ORDER**

1:18-CV-01256 EAW

## INTRODUCTION

Plaintiff Deep Foods Inc. ("Plaintiff") commenced this action on November 8, 2018, asserting various claims arising out of the alleged infringement of Plaintiff's trademark by defendants Deep Foods Inc. and Vikramdeep Cheema (collectively, "Defendants"). (Dkt. 1). Because Defendants have not appeared in this action, upon Plaintiff's request (Dkt. 8), the Clerk of Court entered default as to Defendants on January 10, 2019 (Dkt. 9).

Currently before the Court is Plaintiff's motion for default judgment. (Dkt. 10). For the reasons set forth below, the motion is denied.

## BACKGROUND

### I.    Factual Background

The following facts are taken from Plaintiff's Complaint and motion papers and are accepted as true in light of Defendants' default. *See Cement & Concrete Workers Dist. Council Welfare Fund, Pension Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc.*, 699 F.3d 230, 234 (2d Cir. 2012) ("[A] party's

default is deemed to constitute a concession of all well pleaded allegations of liability. . . .").

Plaintiff is a "leading manufacturer" of Indian foods in the United States, and "has been selling its prepared foods to customers throughout the United States for over 40 years." (Dkt. 1 at ¶ 5). Plaintiff owns and has used the mark "DEEP" in commerce "since at least as early as October, 1977." (*Id.* at ¶ 6). "Plaintiff offers delicious snacks, frozen meals, ice creams[,] and other specialties under its house mark 'DEEP' and its tradename Deep Foods Inc." (*Id.* at ¶ 9). Plaintiff's tradename appears on its packaging, advertising, promotional materials, correspondence, and website. (*Id.* at ¶ 7).

Plaintiff owns the trademark "DEEP" (U.S. Trademark Registration No. 2,544,228), for the following:

> prepared foods, namely frozen and non-frozen entrees and side-dishes consisting primarily of meat, poultry, fish and/or vegetables; and snacks, namely, party mix consisting primarily of mixtures of dried fruits, processed nuts, processed vegetables with processed cereal grains; prepared foods, namely frozen and non-frozen side dishes consisting primarily of rice and/or pasta; cooking sauces; spices; and desserts, namely ice cream, ice milk, frozen yogurt, pies, cakes, cookies and pastries.

(Dkt. 10-3 at ¶ 2). Plaintiff also owns the trademark "DEEP" and Lamp Design (Trademark Registration No. 1,690,366) for "frozen and prepared entrees consisting primarily of meat, fish, poultry or vegetables." (*Id.* at ¶ 3). Plaintiff further owns the trademark "DEEP" and Lamp Design (Trademark Registration No. 1,300,799) for "mixtures of dried fruits, processed nuts, processed vegetables[,] and processed cereal grains." (*Id.* at ¶ 4).

"Defendants own and operate a convenience store featuring prepared foods, snacks[,] and drinks" under the tradename Deep Foods Inc. (Dkt. 1 at ¶ 13). "Defendants' use of Deep Foods Inc. is done with full knowledge of Plaintiff's rights." (*Id.* at ¶ 14). Plaintiff learned of Defendants' infringement activities through its "banker in connection with commercial financing being sought by Plaintiff." (Dkt. 10-2 at ¶ 13). Plaintiff sent a cease and desist letter to Defendants on February 15, 2018, and a follow up letter on March 20, 2018. (*See id.* at ¶ 14). Defendants refuse to cease and desist and continue their infringement activities. (*Id.* at ¶ 15).

## II.    Procedural Background

Plaintiff commenced this action on November 8, 2018. (Dkt. 1). Defendants were served on December 1, 2018. (Dkt. 6; Dkt. 7). Accordingly, Defendants were required to answer or otherwise respond to the Complaint on or before December 22, 2018. *See* Fed. R. Civ. P. 12(a)(1)(A)(i). Defendants failed to file a responsive pleading and, at Plaintiff's request (Dkt. 8), the Clerk of Court entered default against Defendants on January 10, 2019. (Dkt. 9).

On May 29, 2019, Plaintiff moved for default judgment. (Dkt. 10). Plaintiff served their motion papers on Defendants at their last known addresses. (Dkt. 10-5 at 2; Dkt. 12). Defendants have not responded in opposition.

## DISCUSSION

## I.    Legal Standard

Federal Rule of Civil Procedure 55 sets forth the procedural steps for entry of a default judgment. First, a plaintiff must seek entry of default where a party against whom

it seeks affirmative relief has failed to plead or defend in the action. Fed. R. Civ. P. 55(a). Plaintiff has obtained entry of default as to Defendants in this case. (Dkt. 7). "Having obtained a default, a plaintiff must next seek a judgment by default under Rule 55(b)." *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *see also* Fed. R. Civ. P. 55(b). "Once found to be in default, a defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability." *Philip Morris USA Inc. v. 5 Brothers Grocery Corp.*, No. 13-CV-2451 (DLI)(SMG), 2014 WL 3887515, at *2 (E.D.N.Y. Aug. 5, 2014) (citation omitted).

"As the Second Circuit has noted, when determining whether to grant a default judgment, the Court is guided by the same factors which apply to a motion to set aside entry of default." *Krevat v. Burgers to Go, Inc.*, No. 13-CV-6258, 2014 WL 4638844, at *5 (E.D.N.Y. Sept. 16, 2014) (citing *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 170-71 (2d Cir. 2001)). The three factors include: (1) "whether the defendant's default was willful"; (2) "whether the defendant has a meritorious defense to plaintiff's claims"; and (3) "the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Id.* "[P]rior to entering default judgment, a district court is required to determine whether the [plaintiff's] allegations establish the [defendant's liability] as a matter of law." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011). Ultimately, "[t]he decision whether to enter default judgment is committed to the district court's discretion." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 116 (2d Cir. 2015).

## II.    Willfulness

The Court finds that Defendants' default is willful. Plaintiff has submitted proof of service demonstrating the Summons and Complaint were personally served on Defendants on December 1, 2018. (Dkt. 6; Dkt. 7). Moreover, Plaintiff's motion for default judgment was served upon Defendants at their last known addresses (Dkt. 12), and Defendants also did not respond to it. "Defendant's failure to appear, failure to respond to the Complaint, and failure to respond to the instant motion sufficiently demonstrate willfulness." *Krevat*, 2014 WL 4638844, at *8 (citation omitted); *see also S.E.C. v. McNulty*, 137 F.3d 732, 738-39 (2d Cir. 1988) (defendant's failure to appear, to respond to complaint, and to respond to motion for default judgment indicates willful conduct); *Mason Tenders Dist. Council v. Duce Const. Corp.*, No. 02Civ.9044(LTS)(GWG), 2003 WL 1960584, at *2 (S.D.N.Y. April 25, 2003) ("Defendants, having failed to respond in any way to the Summons and Complaint or otherwise make any appearance in this action and having failed to provide for its failure to defend, have defaulted willfully.").

## III.    Meritorious Defenses

The Court next considers whether Defendants have a meritorious defense to Plaintiff's claims. "A defense is meritorious if it is good at law so as to give the factfinder some determination to make." *Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (citation omitted). "While a defendant need not establish his defense conclusively, he must 'present evidence of facts that, if proven at trial, would constitute a complete defense.'" *Krevat*, 2014 WL 4638844, at *6 (quotation and citation omitted).

"[W]here a defendant fails to answer the complaint, a court is unable to make a determination whether the defendant has a meritorious defense to the plaintiff's claims, which circumstance weighs in favor of granting a default judgment." *Id.*

> The fact that a complaint stands unanswered does not, however, suffice to establish liability on [the] claims: a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading. With respect to liability, a defendant's default does no more than concede the complaint's factual allegations; it remains the plaintiff's burden to demonstrate that those uncontroverted allegations, without more, establish the defendant's liability on each asserted cause of action.

*Said v. SBS Electronics, Inc.*, No. CV 08-3067(RJD)(JO), 2010 WL 1265186, at *2 (E.D.N.Y. Feb. 24, 2010); *see also Krevat*, 2014 WL 4638844, at *7 ("Even if a plaintiff's claims are deemed admitted, a plaintiff must demonstrate that the allegations set forth in the complaint state valid claims."). Consequently, the Court must assess whether Plaintiff's allegations, accepted as true, demonstrate Defendants' liability as to each of Plaintiff's causes of action.

### A. Trademark Infringement and False Designation of Origin under the Lanham Act and Unfair Competition under New York Common Law

"Courts employ substantially similar standards when analyzing claims for trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1)(a)[,] false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a)[,] . . . [and] unfair competition under New York common law." *Van Praagh v. Gratton*, 993 F. Supp. 2d 293, 301 (E.D.N.Y. Jan. 28, 2014). Accordingly, the Court will address these claims together.

In order to prevail on a claim for infringement of a registered trademark under § 1114(a), a plaintiff must establish two elements. *See Christian Louboutin S.A. v. Yves*

*Saint Laurent Am. Holding, Inc.*, 696 F.3d 206, 216-17 (2d Cir. 2012). First, the plaintiff

must establish that the "plaintiff's mark merits protection" because it is "'distinctive' and

not 'generic.'" *Id.* at 216. Second, the plaintiff must establish that "the defendant's use of

a similar mark is likely to cause consumer confusion." *Id.* at 217. Courts apply the

*Polaroid* test to assess likelihood of confusion, which includes analysis of the following

factors:

> (1) the strength of the plaintiff's mark; (2) the similarity of the marks; (3) the
> competitive proximity of the products in the marketplace; (4) the likelihood
> that the senior user will "bridge the gap" by moving into the junior's product
> market; (5) evidence of actual confusion; (6) the junior user's bad faith in
> adopting the mark; (7) the respective quality of the products; and (8) the
> sophistication of the consumers in the relevant market.

*Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (citing

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2d Cir. 1961)). "[A]pplication of

the *Polaroid* test is 'not mechanical, but rather, focuses on the ultimate question of whether,

looking at the products in their totality, consumers are likely to be confused.'" *Id.*

To prevail on a claim for false designation under § 1125(a), a plaintiff must establish

that defendant "uses in commerce . . . any false designation of origin . . . which is likely to

cause confusion . . . as to the origin . . . of his or her goods." *Krevat*, 2014 WL 4638844,

at *7 (citing 15 U.S.C. § 1125(a)(1)(A)). "A plaintiff asserting a [false designation claim]

'must establish that it has a valid mark entitled to protection and that the defendant's use

of it is likely to cause confusion.'" *Johnson & Johnson v. Azam Inter. Trading*, No. 07-cv-

4302 (SLT)(SMG), 2013 WL 4048295, at *9 (E.D.N.Y. Aug. 9, 2013) (citation omitted).

"Generally, the same facts that support a claim of trademark infringement will suffice to state a valid claim for false designation of origin." *Id.* (citation omitted).

"The Second Circuit has held that 'the essence of unfair competition under New York common law is the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to deceive purchasers as to the origin of the goods." *Philip Morris USA Inc. v. 5 Brothers Grocery Corp.*, No. 13-CV-2451 (DLI)(SMG), 2014 WL 3887515, at *4 (E.D.N.Y. Aug. 5, 2014). "To prevail on an unfair competition claim under New York law, 'a plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief' as well as make a showing of 'bad faith.'" *Lyons P'ship, L.P. v. D&L Amusement & Entm't*, 702 F. Supp. 2d 104, 115 (E.D.N.Y. 2010) (quoting *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 35 (2d Cir. 1995)).

Plaintiff alleges that it has a registered trademark for "DEEP" and has attached copies of its trademark registration. (*See* Dkt. 10-2 at 2-11). Additionally, Plaintiff alleges it has used "DEEP" since "at least as early as October, 1977." (Dkt. 1 at ¶ 6). As such, Plaintiff has established that "DEEP" is a presumptively valid mark for purposes of a trademark infringement claim pursuant to the Lanham Act. *See Malletier v. Burlington Coat Factory Warehouse Corp.*, 426 F.3d 532, 534-35 (2d Cir. 2005) ("[A] registered mark in continuous use for a five-year period is presumptively valid." (citing 15 U.S.C. § 1065)); *New York State Elec. & Gas Corp. v. U.S. Gas & Elec., Inc.*, 697 F. Supp. 2d 415, 426 (W.D.N.Y. 2010) ("A registered trademark, such as 'NYSEG,' that has been in continuous use for at least five years is presumptively valid and entitled to protection.").

Having concluded Plaintiff's mark is presumptively valid and entitled to protection, the Court turns to the *Polaroid* factors to determine whether Defendants' use of the mark is likely to cause confusion. In this regard, the allegations in Plaintiff's Complaint are fairly sparse and no further factual support was submitted with the motion for default judgment. As discussed in detail below, the Court cannot conclude based on this record that Plaintiff has met its burden to demonstrate that its "uncontroverted allegations, without more," *Said*, 2010 WL 1265186, at *2, establish Defendants' liability on the claims for trademark infringement and false designation of origin under the Lanham Act or unfair competition under New York common law.

The first *Polaroid* factor is the strength of Plaintiff's mark. "The strength of a mark is its tendency to identify the goods sold under the mark as emanating from a particular, although possibly anonymous, source." *Cadbury Beverages, Inc. v. Cott Corp.*, 73 F.3d 474, 478 (2d Cir. 1996) (quotations omitted). "In somewhat circular fashion, consideration of this factor includes an evaluation of the same characteristics that initially determined a mark's validity: inherent distinctiveness, descriptiveness, and secondary meaning." *Time, Inc. v. Petersen Publ. Co.*, 173 F.3d 113, 117 (2d Cir. 1999). "A mark is 'inherently distinctive' if its 'intrinsic nature serves to identify a particular source.'" *LVL XIII Brands, Inc. v. Louis Vuitton Malletier S.A.*, 209 F. Supp. 3d 612, 649 (S.D.N.Y. 2016) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 769 (1992)). "A mark has acquired 'secondary meaning' when, 'in the minds of the public, the primary significance of a product feature . . . is to identify the source of the product rather than the product itself." *Id.* (quoting *Two Pesos, Inc.*, 505 U.S. at 766 n.4). Additionally, "[e]ven an inherently

distinctive mark can, in its commercial context, lack strength as a mark." *Nora Bevs., Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123 (2d Cir. 2001). In assessing the commercial strength of a mark, courts considers six factors:

> (1) the senior user's advertising and promotional expenses; (2) consumer studies linking the name to the source; (3) the senior user's sales success; (4) third-party uses and attempts to plagiarize the mark; (5) length and exclusivity of the mark's use; and (6) unsolicited media coverage of the products at issue.

*Strange Music, Inc. v. Strange Music, Inc.*, 326 F. Supp. 2d 481, 489 (S.D.N.Y. 2004).

Plaintiff's mark is a registered, incontestable mark, and it is thus presumptively distinctive. *See Classic Liquor Imps., Ltd. v. Spirits Int'l B.V.*, 201 F. Supp. 3d 428, 442 (S.D.N.Y. 2016) ("Registered marks, like those at issue here, are presumptively distinctive under the *Polaroid* analysis." (quotation omitted)). "However, while the incontestable status of the registration creates a conclusive presumption as to the validity of the mark, such incontestability does not prevent the defendants from questioning the strength of the mark and the scope of its protections." *Kozak Auto Drywash, Inc. v. Enviro-Tech Int'l Inc.*, 823 F. Supp. 120, 123 (W.D.N.Y. 1993); *see also Gruner + Jahr USA Publ. v. Meredith Corp.*, 991 F.2d 1072, 1078 (2d Cir. 1992) (noting that "incontestability does not relieve the trademark owner from the requirement of proving likelihood of confusion," and affirming the finding that incontestable mark was weak for purposes of likelihood of confusion analysis); *Montblanc-Simplo v. Aurora Due S.r.L.*, 363 F. Supp. 2d 467, 481 (E.D.N.Y. 2005) (finding that "an incontestably valid mark" was nonetheless a "relatively weak mark"). Despite alleging the mark was registered, Plaintiff's sparse Complaint does not include allegations as to the mark's distinctiveness, secondary meaning, or commercial

strength. Consequently, while the Court finds that this factor favors Plaintiff, it does so only slightly.

The second *Polaroid* factor is the similarity of the marks. "[I]n evaluating similarity, courts consider 'the mark's overall impression on a consumer, considering the context in which the marks are displayed and the totality of factors that could cause confusion among prospective purchasers.'" *Codename Enters., Inc. v. Fremantlemedia N. Am. Inc.*, No. 16 Civ. 1267 (AT) (SN), 2018 WL 3407709, at *8 (S.D.N.Y. Jan. 12, 2018) (quoting *Malletier*, 426 F.3d at 537). "The fact that the two marks appear similar is not dispositive. Rather, the question is whether such similarity is more likely than not to cause customer confusion." *Brennan's, Inc. v. Brennan's Rest., L.L.C.*, 360 F.3d 125, 133 (2d Cir. 2004) (citation omitted). "[T]he setting in which a designation is used affects its appearance and colors the impression conveyed by it." *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 503 (2d Cir. 1996). As such, "marks that are 'sufficiently similar' but used in greatly different contexts and/or in 'wholly different visual displays' are not at risk of confusion." *E.A. Sween Co., Inc. v. A & M Deli Express, Inc.*, No. 17 CV 2514 (RJD) (RML), 2018 WL 1283682, at *4 (E.D.N.Y. Mar. 9, 2018), *report and recommendation adopted*, 2018 WL 4344951 (E.D.N.Y. Sept. 11, 2018), *aff'd*, 2019 WL 4744696 (2d Cir. Sept. 30, 2019).

Plaintiff alleges it manufactures and sells prepared foods to customers. However, Plaintiff does not allege whether it directly sells to individual consumers or to operators of convenience stores and retail outlets. Additionally, although Plaintiff alleges that Defendants operate a convenience store under the name Deep Foods Inc., Plaintiff does not

allege that Defendants sell prepared foods similar to those sold by Plaintiff. (*See* Dkt. 1 at ¶ 13) (Plaintiff simply alleges that "Defendants own and operate a convenience store featuring prepared foods, snacks[,] and drinks under the identical tradename"). As such, the Court cannot conclude on this record that Defendants use the mark in the same context as Plaintiff—that is, labeling its prepared food items with the mark "DEEP." *Compare A & M Deli Express Inc.*, 2019 WL 4744696, at \*3 (similarity weighed against likelihood of confusion where plaintiff did not allege that defendant convenience store sold similar prepackaged goods nor allege that plaintiff "directly operated delis, convenience stores, or other similar retail operations"), *with Morningside Grp. Ltd. v. Morningside Capital Grp., L.L.C.*, 182 F.3d 133, 140 (2d Cir. 1999) (similarity weighed in favor of likelihood of confusion where both financial investment firms used the words "Group" and "Morningside," and offered nearly identical services).

The third *Polaroid* factor is the proximity of the parties' area of commerce. "The proximity inquiry asks to what extent the two products compete with each other. The more likely it appears that an enterprise in one party's area of commerce might also engage in the other party's area of commerce, the greater the likelihood that the public will infer an affiliation from the similarity of the marks." *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27, 39 (2d Cir. 2016).

Plaintiff alleges that it sells prepared foods to customers throughout the United States, and that Defendants own and operate a convenience store selling prepared foods, snacks and drinks. Although both parties sell prepared foods, "[m]erely selling the same general category of product is not sufficient to establish that the products are in proximate

- 12 -

competition." *E.A. Sween Co., Inc. v. Big City Deli Express Corp.*, No. 14-CV-6031 (KAM)(JO), 2016 WL 5874998, at *5 (E.D.N.Y. Oct. 8, 2016). It appears that Defendants "market solely to consumers who visit its single convenience store in [Niagara Falls, New York]." *A & M Deli Express, Inc.*, 2018 WL 1283682, at *4. By contrast, although Plaintiff alleges it is a manufacturer, it is does not allege whether it sells prepared foods directly to individual consumers or operators of convenience stores and retail outlets. Additionally, Plaintiff does not allege that Defendants stamp their prepared foods with the "DEEP" mark. *Compare id.* at 5 (no competitive proximity where plaintiff sells food items to *operators* of convenience stores and vending machines and the defendant "market[s] solely to *consumers* who visit its single convenience store" (emphasis added)), *with Krevat*, 2014 WL 4638844, at *9 (competitive proximity where both parties engaged in the "niche business of selling kosher hamburgers and sauces," and where both "opened and operated stores in the exact same location").

The fourth *Polaroid* factor "concerns the likelihood that [a] senior user that is not in direct competition with a junior user at the time a suit is brought will later expand the scope of its business so as to enter the junior user's market." *U.S. Polo Ass'n, Inc. v. PRL USA Holdings, Inc.*, 800 F. Supp. 2d 515, 531 (S.D.N.Y. 2011). "In order to bridge the gap, plaintiffs must demonstrate that they intend to enter the market of defendants and that prospective customers are aware of this intention." *Strange Music, Inc.*, 326 F. Supp. 2d at 493; *see also Lang v. Ret. Living Pub. Co.*, 949 F.2d 576, 582 (2d Cir. 1991) ("[T]he intent of the prior user to expand or its activities in preparation to do so, unless known by prospective purchasers, does not affect the likelihood of confusion." (quotation omitted)).

Plaintiff has not alleged it intends to enter Defendants' market. Accordingly, this factor weighs against the likelihood of confusion. *A & M Deli Express, Inc.*, 2018 WL 1283682, at \*5 (bridging the gap factor weighed against likelihood of confusion where parties were "not competitively proximate," and no evidence that the plaintiff "intends to enter defendant's market"); *Boston Rest. Assocs. v. Ward*, No. 17 CV 5557 (FB) (RML), 2018 WL 5456669, at \*6 (E.D.N.Y. Aug. 1, 2018) (bridging the gap factor weighed against likelihood of confusion where there was a "lack of evidence" "that plaintiff plans to expand into defendants' geographic region"), *report and recommendation adopted*, 2018 WL 6332492 (E.D.N.Y. Dec. 3, 2018).

The fifth *Polaroid* factor is whether there is evidence of actual confusion. "Actual confusion is highly probative of the likelihood of confusion." *Classic Liquor*, 201 F. Supp. 3d at 448. Actual confusion "is generally shown through consumer surveys[,] anecdotal evidence[,] empirical studies[,] or expert testimony." *Id.*

Here, Plaintiff alleges in a conclusory manner that Defendants' use of "DEEP" is "likely to cause confusion." (Dkt. 1 at ¶¶ 17, 24, 23). However, Plaintiff does not allege that consumer confusion has actually occurred, nor offer any factual details concerning the alleged confusion. (*See id.*). Accordingly, this factor weighs against a finding of a likelihood of confusion. *See Sola Franchise Corp. v. Solo Salon Studios Inc.*, No. No.14-CV-0946(JS)(AKT), 2015 WL 1299259, at \*10 (E.D.N.Y. Mar. 23, 2015) (factor weighed against likelihood of confusion where no allegation or evidence that confusion actually occurred); *Balady*, 2014 WL 7342867, at \*8 (factor weighed against likelihood of confusion due to "[t]he absence of specific information regarding customer confusion").

The sixth *Polaroid* factor is whether the junior user acted in bad faith or was otherwise reprehensible in adopting the mark. "Bad faith generally refers to an attempt by a junior user of a mark to exploit the good will and reputation of a senior user by adopting the mark with the intent to sow confusion between the two companies' products." *Star Indus., Inc. v. Bacardi & Co. Ltd.*, 412 F.3d 373, 388 (2d Cir. 2005). Bad faith requires showing the "defendant had knowledge—be it actual or constructive—of the plaintiff's 'prior similar mark.'" *Kohler Co. v. Bold International FZCO*, No. 17-CV-4233 (LDH), 2018 WL 3635056, at *14 (E.D.N.Y. June 19, 2018). Plaintiff must present evidence "indicating an intent to promote confusion or exploit good will or reputation." *Star Indus.*, 412 F.3d at 388.

Plaintiff alleges that Defendants' use of "DEEP" is "done with full knowledge of Plaintiff's rights" (Dkt. 1 at ¶ 14), and that "Defendants' actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with Plaintiff's federally registered trademarks" (*id.* at ¶ 20). Additionally, Plaintiff alleges it sent a cease and desist letter to Defendants on February 15, 2018, and a follow up letter on March 20, 2018. On the whole, this factor supports a finding of a likelihood of confusion, but aside from Defendants' default, Plaintiff does not allege other conduct by Defendants from which the Court could infer Defendants acted with the requisite intent to sow confusion between their and Plaintiff's products. *Compare Sola Franchise Corp.*, 2015 WL 1299259, at *11 (defendant's default weighed in favor of bad faith where evidence that "Plaintiff's representatives spoke to Defendant's owner twice prior to [the] litigation, warning him that Defendant was infringing on Plaintiff's mark" and that "Defendant refused to change the

name of the salon or to provide Plaintiff with an address to mail a cease and desist letter"), *with A & M Deli Express Inc.*, 2018 WL 1283682, at *6 (bad faith factor was neutral or slightly favored plaintiff where plaintiff's "repeated unsuccessful efforts to contact defendant, defendant's failure to respond to plaintiff's multiple requests for information and materials, and defendant's default" "could raise the specter of bad faith, but could equally convey that defendant . . . was genuinely surprised and unaware of the infringement and unsure of how to proceed").

The seventh *Polaroid* factor is the quality of the junior user's product. "The analysis of the quality of a defendant'[s] product is primarily concerned with whether the senior user's reputation could be jeopardized by virtue of the fact that the junior user's product is of inferior quality." *Codename*, 2018 WL 3407709, at *12 (quotation omitted). Here, Plaintiff has not alleged facts regarding the quality of Defendants' products. *E.A. Sween Co., Inc.*, 2018 WL 1283682, at *6 (quality of defendants' products was a neutral factor where no evidence as to quality of parties' products); *Kohler*, 2018 WL 3635056, at *49 (same).

The eighth *Polaroid* factor is the sophistication of the relevant consumer group. Plaintiff has not alleged facts regarding the sophistication of its consumers. Accordingly, this factor is neutral as to the likelihood of confusion. *See Virgin Enters.*, 335 F.3d at 151 (where neither side "submitted evidence on the sophistication of consumers . . . the sophistication factor is neutral"); *A & M Deli Express Inc.*, 2018 WL 1283682, at *5 (factor neutral because "no evidence in the record as to consumer sophistication").

Considering the *Polaroid* factors and the circumstances present here, the Court finds Plaintiff's allegations are insufficient to establish Defendants' liability. The record does not support a finding of a likelihood of confusion, as there are significant gaps in the evidence. The Second Circuit has described "strength, similarity, and proximity . . . as the most important *Polaroid* factors in most cases." *Akiro LLC v. House of Cheatham, Inc.*, 946 F. Supp 2d 324, 342 (S.D.N.Y. May 17, 2013) (citing *Mobil Oil Corp. v. Pegasus Petroleum Corp.*, 818 F.2d 254, 258 (2d Cir. 1987)). In this case, of these three most important *Polaroid* factors, only the strength of the mark favors Plaintiff, and only slightly. The other most significant factors—similarity and proximity—are not established through the sparse allegations in the Complaint. Moreover, of the remaining factors, only bad faith favors Plaintiff. Based on the foregoing analysis, weighing the *Polaroid* factors, the Court cannot conclude that Plaintiff has demonstrated a consumer is likely to be confused. *Codename*, 2018 WL 3407709, at *12. Accordingly, the Court denies Plaintiff's motion for default judgment with respect to its trademark infringement and false designation claims under the Lanham Act, and unfair competition claim under New York common law.

**B.    Deceptive Acts and Practices under New York General Business Law § 349(a)**

Under New York General Business Law ("NY GBL") § 349, "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" are unlawful. N.Y. Gen. Bus. Law § 349(a). "The purpose of NY GBL § 349 is to '"empower customers," especially "the disadvantaged"' and to 'even the playing field of their disputes with better funded and superiorly situated fraudulent businesses.'" *Van*

*Praagh*, 993 F. Supp. 2d at 305 (citation omitted). "To make out a prima facie case under Section 349, a plaintiff must demonstrate that (1) the defendant's deceptive acts were directed at consumers, (2) the acts are misleading in a material way, and (3) the plaintiff has been injured as a result." *Maurizio v. Goldsmith*, 230 F.3d 518, 521 (2d Cir. 2000) (citation omitted).

"[T]he prevailing view in the Second Circuit is that trademark infringement claims are not cognizable under [§ 349(a)] unless there is specific and substantial injury to the public interest over and above the ordinary trademark infringement." *Perfect Pearl Co., Inc. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 543 (S.D.N.Y. 2012). As such, "trademark infringement actions alleging only general consumer confusion do not threaten the direct harm to consumers for purposes of stating a claim under NY GBL § 349." *Sola Franchise Corp.*, 2015 WL 1299259, at *14.

Here, Plaintiff alleges that "Defendants' unauthorized activities and infringement are likely to cause confusion or to cause mistake or to deceive the consuming public as to the true source of goods sold . . . by Defendants." (Dkt. 1 at ¶ 17). Plaintiff alleges no facts beyond the likelihood of general consumer confusion. Accordingly, "the Court finds that Plaintiff has not met the threshold requirement of alleging that the matter affects the public interest in the State of New York." *Van Praagh*, 993 F. Supp. 2d at 305 (plaintiff failed to state § 349(a) claim where plaintiff alleged "no facts suggesting anything beyond the general consumer confusion normally found in a trademark infringement case"); *see also Sola Franchise Corp.*, 2015 WL 1299259, at *15 (plaintiff's "conclusory allegation that Defendants' infringing conduct 'has caused harm to the general public interest'" is not

sufficient to meet "threshold requirement of alleging that the matter affects the public interest in the State of New York"). Accordingly, the Court denies Plaintiff's motion for default judgment with respect to its deceptive acts and practices claim under NY GBL § 349(a).

### C. Dilution under the Lanham Act

"Federal law allows the owner of a 'famous mark' to enjoin a person from using 'a mark or trade name in commerce that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark.'" *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 110 (2d Cir. 2010) (citing 15 U.S.C. § 1125(c)(1)). A "mark is famous if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner." § 1125(c)(2)(A).

The famous mark requirement "significantly limits the pool of marks that may receive dilution protection." *Starbucks*, 588 F.3d at 105; *see also Global Brand Holdings, LLC v. Church & Dwight Co.*, No. 17 CV 6571, 2017 WL 6515419, at *3 (S.D.N.Y. Dec. 19, 2017) (the famous mark requirement "ensures that dilution causes of action are restricted to those few truly famous marks like Budweiser beer, Camel cigarettes, Barbie Dolls, and the like" (quotation and citations omitted)). Consequently, "courts generally have limited famous marks to those that receive multi-million-dollar advertising budgets, generate hundreds of millions of dollars in sales annually, and are almost universally recognized by the general public." *Helios Int'l S.A.R.L. v. Cantamessa USA, Inc.*, No. 12 CV 8205, 2013 WL 3943267, at *10 (S.D.N.Y. July 31, 2013) (alteration and quotation omitted).

Here, Plaintiff simply alleges that "DEEP" is the "prominent and distinctive portion of Plaintiff's tradename Deep Food Inc.," which is "extremely well known." (Dkt. 1 at ¶ 7). Plaintiff also alleges it is a "leading manufacturer." (*Id.* at ¶ 6). Plaintiff's allegations are insufficient to establish that Plaintiff's mark is as famous and distinctive "as to be comparable to such iconic brands such as Budweiser, Camel, and Barbie." *Big City Deli Express Corp.*, 2016 WL 11396817, at *5. *See id.* (insufficient allegations that mark is famous where plaintiff alleged it was named "Vendor of the Year," inducted into the Convenience Store Industry Hall of Fame in 2001, co-branded with other famous foods (Jimmy Dean, Armour, Butterball, Hot Pockets), made significant annual food sales, and was consistently ranked among top selling convenience foods in the country); *Diesel S.P.A. v. Does*, No. 14-CV-4592 (KMW), 2016 WL 96171, at *6 (S.D.N.Y. Jan. 8, 2016) (sufficient allegation that mark is famous where plaintiff alleged "Diesel's marks have been widely used on merchandise and in advertising across a variety of media, and have gained 'widespread publicity and public recognition'" and that "Diesel's marks have become associated in the minds of consumers with Diesel as a source of high-quality fashion apparel, accessories, and associated goods").

Accordingly, the Court denies Plaintiff's motion for default judgment with respect to its dilution claim under the Lanham Act.

### D. Dilution under New York General Business Law § 360-l[1]

NY GBL § 360-l "entitles a plaintiff to injunctive relief when there is a '[l]ikelihood . . . of dilution of the distinctive quality of a mark or trade name . . . notwithstanding the absence of competition between the parties or the absence of confusion as to the source of goods or services.'" *Capital One Fin. Corp. v. Capital One Certified Inc.*, No. 18 CV 580 (ARR) (RML), 2019 WL 1299266, at *5 (E.D.N.Y. Mar. 5, 2019) (citing N.Y. Gen. Bus. Law § 360-l)), *report and recommendation adopted*, 2019 WL 1299661 (E.D.N.Y. Mar. 21, 2019). In order to prevail, a plaintiff must prove: (1) "its mark possesses a 'distinctive quality capable of dilution'"; and (2) "there is a likelihood of such dilution." *CommScope, Inc. v. Commscope (U.S.A.) Int'l Group Co.*, 809 F. Supp. 2d 33, 39 (N.D.N.Y. 2011) (citation omitted).

"Distinctiveness, in this context, is measured by the 'strength of a mark for infringement purposes.'" *Lyons P'ship*, 702 F. Supp. 2d at 116. "Likelihood of dilution 'can be established by [a] showing either of blurring or of tarnishment.'" *ABC Rug & Carpet Cleaning Serv. Inc. v. ABC Rug Cleaners, Inc.*, No. 08 Civ. 5737(RMB)(RLE), 2010 WL 10091076, at *23 (S.D.N.Y. Feb. 10, 2010) (citing *Hormel Foods Corp.*, 73 F.3d at 506). "To determine whether blurring has occurred, [courts] look to six factors, including: (1) similarity of the trademarks; (2) similarity of the products; (3) sophistication of consumers; (4) predatory intent; (5) renown of the senior mark; and (6) renown of the

---

[1] Plaintiff labels this cause of action as "Count IV, New York Statutory Unfair Competition." (Dkt. 1 at 6). However, in connection to this claim, Plaintiff cites to NY GBL § 360-l and includes allegations relevant to a dilution claim. (*Id.* at ¶ 37). Accordingly, the Court resolves this cause of action as a NY GBL § 360-l dilution claim.

junior mark." *Id.* (quotation and citation omitted). "The first five factors are closely analogous to the *Polaroid* factors. . . ." *Id.* (citation omitted). Tarnishment occurs where a mark is "'linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context,' with the result that 'the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods.'" *Hormel Foods Corp.*, 73 F.3d at 507.

Here, Plaintiff has not adequately alleged dilution by blurring or by tarnishment. Plaintiff does not allege Defendants' products are stamped with "DEEP," that both parties market to the same customers, or that both parties sell the same prepared foods. Because Plaintiff has not alleged sufficient similarity, Plaintiff has not adequately alleged dilution by blurring. *Compare A & M Deli Express Inc.*, 2019 WL 4744696, at *4 (affirming dismissal of plaintiff's § 360-l dilution claim where despite use of same word, no evidence of similarity due to "different context of the parties' usage and the differences between their products"), *with Diesel S.P.A.*, 2016 WL 96171, at *8 (adequate allegation of blurring where plaintiff alleged that defendants were using exact copies of plaintiff's marks and that defendants sold extremely similar products to those sold by plaintiff).

Plaintiff also alleges no facts as to the inferior quality of Defendants' prepared foods. Consequently, Plaintiff does not adequately allege dilution by tarnishment. *Compare Johnson & Johnson*, 2013 WL 4048925, at *8 (adequate allegation of tarnishment where plaintiff alleged defendant's products were counterfeits of inferior quality and likely to dilute plaintiff's marks), *with Miss Universe, L.P., LLP v. Villegas*, 672 F. Supp. 2d 575, 591 (S.D.N.Y. 2009) (no tarnishment where plaintiff, in its

admissions, "applaud[ed] the defendants for running a 'high-quality' and 'well-respected pageant'").

Accordingly, the Court denies Plaintiff's motion for default judgment with respect to its dilution claim under NY GBL § 360-l .

## **CONCLUSION**

For the foregoing reasons, Plaintiff's motion for default judgment (Dkt. 10) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated:      December 26, 2019
              Rochester, New York